UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re: RESIDENTIAL CAPTIAL, LLC

----------------------------------------------------------x

RESIDENTIAL FUNDING CO., LLC,

                                    Plaintiff,

                -against-

GREENPOINT MORTGAGE FUNDING, INC.,

                                    Defendant.
----------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/24/14_

Ch. 11 Case No. 12-12020 (MG)

Adv. Proc. No. 14-1916 (MG)
13-cv-8937 (PKC)
14-cv-5452 (PKC)

MEMORANDUM
AND ORDER

CASTEL, U.S.D.J.

　　　　Defendant Greenpoint Mortgage Funding, Inc. ("Greenpoint") moves to withdraw

the reference to the bankruptcy court in this breach of contract action brought by plaintiff

Residential Funding Co., LLC ("RFC").  For the following reasons, the Court holds that the

bankruptcy court has jurisdiction over the action, that the action is non-core, and that

Greenpoint's motion will be denied.


BACKGROUND

　　　　RFC is a limited liability company with its principal place of business in

Minneapolis, Minnesota.  Prior to its insolvency, RFC was in the business of acquiring and

securitizing residential mortgage loans.  RFC purchased loans from many mortgage originators,

including Greenpoint, and distributed the loans by either pooling them with other similar

mortgage loans to sell into residential mortgage-backed security ("RMBS") trusts, or selling them to whole loan purchasers.

The complaint alleges that Greenpoint sold over 1,200 mortgage loans with a total principal balance in excess of $470 million to RFC pursuant to a mortgage loan purchases and warranties agreement (the "Agreement").  (Compl. ¶¶ 17-18, Dkt. No. 3-1)   The gravamen of the complaint is that Greenpoint breached its obligations to RFC under the Agreement by failing to ensure that mortgage loans sold to RFC met underwriting standards set forth in representations and warranties in the Agreement, and that Greenpoint is obligated to indemnify RFC for a portion of the liabilities that RFC incurred in a 2012 global settlement providing a resolution of the multifarious pre-petition RMBS-related claims against it (the "Global Settlement").  RFC's complaints in its 83 other actions (together with this action, the "RFC Actions") bring substantially similar claims against other mortgage loan originators pursuant to each of their individual purchase agreements with RFC.[1]

In May 2012, faced with over two dozen lawsuits alleging that the loans securitized and sold by RFC were defective, RFC filed a petition for relief under Chapter 11 of the Bankruptcy Code.  Dozens of claimants filed hundreds of proofs of claim in the bankruptcy proceeding, collectively alleging tens of billions of dollars in damages stemming from defective mortgage loans.  Greenpoint did not file a proof of claim in RFC's bankruptcy proceeding. Ultimately, RFC agreed to the Global Settlement, resolving all of its RMBS-related liabilities in exchange for over $9 billion of allowed claims in its bankruptcy case, plus additional sums for securities fraud claims.  On December 11, 2013, the bankruptcy court (Martin Glenn, U.S.B.J.)

---

[1] RFC Actions brought after confirmation of the plan are brought in the name of the Rescap Liquidating Trust, RFC's post-confirmation successor in interest.  Because there is no relevant distinction between the pre- and post-confirmation entities for purposes of the instant motion, for simplicity, this Memorandum and Order shall refer to the Rescap Liquidating Trust as "RFC."

approved the Global Settlement and entered an order (the "Confirmation Order") confirming the debtor's chapter 11 liquidation plan (the "Plan").  (Dkt. No. 6065, In re Residential Capital, LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013))

Prior to the confirmation of the plan, RFC brought at least three civil actions against individual mortgage loan originators in the United States District Court for the District of Minnesota.[2]  A few days after confirmation of the plan, RFC brought an additional 66 substantially similar actions in the District of Minnesota.  See RFC v. Cherry Creek Mortgage Co., 13-cv-3449 (JNE) (SER), 2014 WL 1686516, at *1 (D. Minn. Apr. 29, 2014).  Each of the suits invoked the court's diversity jurisdiction under 28 U.S.C. § 1332 and asserted claims for breach of contract and indemnification pursuant to individual mortgage loan purchase and warranty agreements between RFC and each originator.  Id.  Beginning in March 2013, RFC filed motions under 28 U.S.C. § 1404 in each of the Minnesota actions seeking to transfer each case to this District, where the cases would be referred to the bankruptcy court.  After the denial of seven such transfer motions, RFC withdrew its remaining transfer motions.  See id. at *4-5; RFC v. First Citizens Bank & Trust Co., 13-cv-3514 (RHK) (TNL) (D. Minn. May 13, 2014) (Dkt. No. 33) (same order issued in five cases).

Subsequently, RFC filed an additional set of actions in this Court and in New York state court, and also commenced several adversary proceedings in the bankruptcy court for this district.  The complaint in the instant action, filed on December 17, 2013, asserted that this court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  Residential Funding Co. v. Greenpoint Mortg. Funding, Inc., 13-cv-8937 (PKC) (Dkt. No. 1 at ¶ 13).  On March 14, 2014, RFC filed an amended complaint in this action, newly alleging that this Court also has federal

---

[2] RFC v. MortgageIT, Inc., 13-cv-189 (D. Minn. Jan. 23, 2013); RFC v. The Money Source, Inc.. 13-cv-317 (D. Minn. Feb. 7, 2013); RFC v. Eagle Nat'l Bank, 13-cv-448 (D. Minn. Feb. 25, 2013).

question jurisdiction over the matter pursuant to 28 U.S.C. § 1334, because "the matter arises under title 11 or arises in or is related to the bankruptcy proceeding . . . ."  (Id., Dkt. No. 33 at ¶ 15)  Several days after filing the amended complaint, RFC filed a letter motion requesting that the case be referred to the bankruptcy court.  This Court granted the request on March 19, 2014 pursuant to the Amended Standing Order of Reference for this district (the "Standing Order").  See Amended Standing Order of Reference, 12-mc-00032 (S.D.N.Y. Jan. 31, 2012).

On July 18, 2014, Greenpoint filed the instant motion to withdraw the reference. (Dkt. No. 1)  Similar motions to withdraw the reference were filed in this district by the defendants in connection with ten other adversary proceedings then pending before the bankruptcy court under a consolidated docket.  In re ResCap Liquidating Trust Mortg. Purchase Litig., 14-ap-07900 (Bankr. S.D.N.Y.).

On the same day that Greenpoint's motion in this case was filed, Judge Hellerstein issued a decision granting a defendant's motion to withdraw the reference and transfer the action to the District of Minnesota.  Rescap Liquidating Trust v. RBC Mortg. Co., 14-cv-4457 (AKH), Dkt. No. 10 (S.D.N.Y. Jul. 18, 2014).  On September 9, 2014, Judge Pauley ordered the same relief in a separate case.  ResCap Liquidating Trust v. CMG Mortg., Inc., 14-cv-4950 (WHP), 2014 WL 4652664 (S.D.N.Y. Sep. 10, 2014).  Judge Swain followed suit on September 16, 2014 in another of the RFC Actions.  Rescap Liquidating Trust v. Primary Capital Advisors, LLC, 14-cv-05224 (LTS), Dkt. No. 31 (S.D.N.Y.).  In each of those three actions, the underlying contract between RFC and the originator-defendant included an exclusive forum selection provision requiring that claims arising out of the contract be litigated before the state or federal courts of Minnesota.  In this case, a similar exclusive forum selection provision in the

Agreement points to the state and federal courts of New York.  Am. Compl. Ex. A at 45, Dkt.

No. 33-1, 13-cv-8937 (PKC) (S.D.N.Y. Mar. 3, 2014).

LEGAL STANDARD

A "district court may withdraw, in whole or in part, any case or proceeding referred [to

the bankruptcy court] under this section, on its own motion or on timely motion of any party, for

cause shown."  28 U.S.C. § 157(d).  By statute, bankruptcy judges may enter final judgments in

"all core proceedings arising under title 11, or arising in a case under title 11, referred under

subsection (a) of this section. . . ."  28 U.S.C. § 157(b)(1).  A bankruptcy court's final judgment

in a core proceeding is appealable to the district court.  28 U.S.C. § 158(a)(1).  In a referred

matter that is not a core proceeding but "that is otherwise related to a cause under title 11," a

bankruptcy court may "submit proposed findings of fact and conclusions of law to the district

court, and any final order or judgment shall be entered by the district court" after reviewing the

proposals de novo.  28 U.S.C. § 157(c)(1).

In order to understand the import of the core/non-core distinction, some context

regarding the Supreme Court's decisions on this subject is necessary.  In 1982, the Supreme

Court struck down as unconstitutional the provisions of the Bankruptcy Code of 1978 that

granted bankruptcy courts final adjudicative authority over state law claims brought against third

parties that were not otherwise part of the bankruptcy proceeding, holding that Article III of the

Constitution required those matters to be adjudicated by an Article III Court.  Northern Pipeline

Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 87 (1982).  In response, Congress enacted

the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Act"), establishing

the above-described division of matters referred to the bankruptcy courts into "core" and "non-

core" proceedings.  See Pied Piper Casuals, Inc. v. Ins. Co. of State of Pa., 72 B.R. 156, 158 (S.D.N.Y. 1987).  Subsequently, in Stern v. Marshall, 131 S.Ct. 2594 (2011), the Supreme Court held that bankruptcy courts lack the constitutional authority to enter final judgments in certain cases that were statutorily designated as core proceedings under the 1984 Act.  Specifically, the Court held that bankruptcy courts "lack[] the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."  Id. at 2620.  The Supreme Court recently reaffirmed that bankruptcy courts retain the authority to submit proposed findings of fact and conclusions of law in any "proceeding that is not a core proceeding but that is otherwise related to a case under title 11 . . . ."  Exec. Benefits Ins. Agency v. Arkison, 134 S.Ct. 2165, 2173 (2014).

As a result of the foregoing line of cases, in order to determine the appropriate procedural approach district courts and bankruptcy courts may be called upon to determine whether a bankruptcy court may enter a final judgment in a particular matter.  In making this determination, courts in this district consider (1) whether the claim involves a public or private right, (2) whether the claim would be resolved in adjudicating a creditor's proof of claim, or (3) whether the parties consented to final adjudication by the bankruptcy court.  Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd., 905 F. Supp. 2d 526, 530 (S.D.N.Y. 2012) (citing Stern at 2608, 2614, 2617); accord Pryor v. Tromba, 13-cv-676 (JFB), 2014 WL 1355623, at *3 (E.D.N.Y. Apr. 7, 2014).

"A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn."  Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993).  "[O]nce a district court makes the

core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administrations, the prevention of forum shopping, and other related factors."  Id.  "Post-Stern, district courts faced with a motion to withdraw the reference to the bankruptcy court have considered, in addition to whether a claim is designated as "core" by statute, whether the bankruptcy court would have constitutional authority to enter a final judgment."  ResCap Liquidating Trust v. CMG Mortg., Inc., 2014 WL 4652664, at *2 (citing Dynegy Danskammer, 905 F. Supp. 2d at 532; Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP, 462 B.R. 457, 467 (S.D.N.Y. 2011)); see also In re Extended Stay, Inc., 466 B.R. 188, 204 (S.D.N.Y. 2011) ("Accordingly, the core/non-core distinction is still a relevant consideration in permissive withdrawal analysis, except to the extent Stern holds that Congress's classification of a claim as "core" exceeds the boundaries of Article III.").


DISCUSSION

   Greenpoint argues that its motion to withdraw the reference should be granted for two separate reasons.  First, it contends that because RFC's claims neither arise under the bankruptcy code nor bear any meaningful relationship to its Chapter 11 case, the bankruptcy court lacks jurisdiction over this matter.  Second, it argues that even if the bankruptcy court has jurisdiction, application of Orion weighs in favor of dismissal.


 A.  Jurisdiction of the Bankruptcy Court

   The complaint alleges that this court has federal question jurisdiction over this case under 28 U.S.C. § 1334.  Am. Compl. ¶ 15.  Section 1334 provides federal district courts

with jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). Title 28 further provides that district courts may refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." 28 U.S.C. § 157(a). As previously discussed, section 157 also divides matters referred to the bankruptcy court into two categories: core and non-core proceedings. See generally 28 U.S.C. § 157.

Under section 157, a bankruptcy judge may "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . ." 28 U.S.C. § 157(b)(1). A case "arises under" title 11 when the cause of action or substantive right claimed is created by the Bankruptcy Code. MBNA Am. Bank, N.A. v. Hill, 436 F.3d 104, 108-09 (2d Cir. 2006). Cases "arise in" a title 11 proceeding if they "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." Baker v. Simpson, 613 F.3d 346, 351 (2d Cir. 2010) (citation and quotations omitted). With respect to "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," a bankruptcy judge may "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge," after applying de novo review. 11 U.S.C. § 157(c)(1).

RFC's state law claims for breach of contract and indemnification are not created by the Bankruptcy Code, nor would they have no existence outside of RFC's bankruptcy proceeding. The parties dispute whether the bankruptcy court has jurisdiction because its claims are "related to" its Chapter 11 case. Prior to the confirmation of a plan, "a civil proceeding is related to a title 11 case if the action's outcome might have any conceivable effect on the bankrupt estate." Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572, 579 (2d Cir.

2011) (citation and internal quotation marks omitted).  Post-confirmation, where the bankruptcy case is a reorganization, the "close nexus" test applies.  See ACE Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.), 448 Fed. Appx. 134, 137 (2d Cir. 2011) (summary order) (citing Reese v. Beacon Hotel Corp., 149 F.2d 610, 611 (2d Cir. 1945)).   That test has two requirements: "First the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan and second, the plan must provide for the retention of jurisdiction over the dispute."  Savoy Senior Hous. Corp. v. TRBC Ministries, LLC, 401 B.R. 589, 597 (S.D.N.Y. 2009) (citation and quotations omitted).  With respect to a liquidation proceeding such as the instant case, whether the appropriate standard for determining the scope of a bankruptcy court's jurisdiction over a matter is "any conceivable effect" or "close nexus" is an open question in the Second Circuit.[3]

This Court needs not resolve the issue of which standard determines the bankruptcy court's post-confirmation jurisdiction in a liquidation case, because the instant matter satisfies the more restrictive "close nexus" standard.  The confirmed plan of liquidation expressly preserves RFC's claims and transfers them to the liquidating trust to prosecute.  Plan, Article IV-S, Dkt. No. 6065-1 at 80-81, In re Residential Capital, No. 12-12020 (Bankr. S.D.N.Y. Dec. 11, 2013).  RFC's claims in this action are such transferred claims, and any funds recovered will be distributed to the creditors of the estate.  (Id., Article VI-C, Dkt. No. 6065-1 at 85-86).  Further, the plan also expressly provides for retention of jurisdiction over these claims, by preserving

---

[3] The "close nexus" test applies post-confirmation in reorganization cases because "it is assumed the reorganized debtor is becoming self-sufficient, and no longer needs umbrella protection from the bankruptcy court. Additionally, there is no estate, as property reverts to the reorganized debtor."  In re Park Ave. Radiologists, P.C., 450 B.R. 461, 468 (Bankr. S.D.N.Y. 2011). Where the confirmed plan calls for the liquidation of the debtor, some courts in this Circuit apply the "close nexus" test while others apply the "conceivable effect" test.  See Allstate Ins. Co, v, CitiMortgage, Inc., 11-cv-1927 (RJS), 2012 WL 967582, at *5 (S.D.N.Y. Mar. 12, 2013) (summarizing divided views).

both "exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 cases and the Plan," and jurisdiction over "any Causes of Action preserved under the Plan."  (Id., Article XII, Dkt. No. 6065-1 at 116-18)  RFC's claims against Greenpoint fall within the scope of these provisions.

Accordingly, this Court concludes that the bankruptcy court has "related to" jurisdiction over RFC's claims.  The Court now turns to the question of whether withdrawal of the reference is warranted.

B.  Application of the Orion Factors Does Not Require Withdrawal of the Reference

a.  Core vs. Non-Core and Stern

Although the term "core proceeding" is not statutorily defined, section 157(b)(2) of the Bankruptcy Code sets forth a non-exhaustive list of such proceedings.  11 U.S.C. § 157(b)(2).  "A proceeding that involves rights created by bankruptcy law, or that could arise only in a bankruptcy case, is a core proceeding."  DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co., 464 B.R. 587, 591 (S.D.N.Y. 2012) (citing MBNA Am. Bank, 436 F.3d at 108-09).  Conversely, a claim is non-core if it "does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks federal bankruptcy jurisdiction."  See, e.g., id. (quoting N. Am. Energy Conservation, Inc. v. Interstate Energy Res., Inc., 00-cv-4302 (SHS), 2000 WL 1514614, at *2 (S.D.N.Y. Oct. 10, 2000)).

The determination of whether a contract action is a core proceeding or a non-core proceeding also requires consideration of "(1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization."  Universal Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.), 419 F.3d 83,

97 (2d Cir. 2005) (citation and internal quotations omitted); see also Dev. Specialists, 2011 WL 7678683, at *5 ("Where a contract sued upon was formed prior to the bankruptcy petition, it will generally be highly unlikely that a proceeding based on that contract turns on the bankruptcy laws.").  With respect to the factor of independence from the bankruptcy case, a proceeding can be considered core "if either (1) the type of the proceeding is unique to or uniquely affected by the bankruptcy proceeding, or (2) the proceeding directly affects a core bankruptcy function." Universal v. Allfirst Bank, 419 F.3d at 97 (citation and internal quotations omitted).

        In Orion, the Second Circuit specifically held that a "breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core."  4 F.3d at 1102.  Here, RFC brings claims solely under state contract law and does not invoke any rights under the Bankruptcy Code.  Greenpoint has not filed a proof of claim in RFC's bankruptcy proceeding.  RFC's claims arise out of pre-petition contracts between RFC and Greenpoint.  Further, that RFC could have proceeded in a non-bankruptcy court is made plain by its having filed the complaint in this Court in the first instance; its initial complaint made no reference to bankruptcy jurisdiction and was styled solely as a diversity action.

        RFC argues that an action is core where it requires the "application and enforcement" of a bankruptcy court's orders.  Specifically, it contends that the adjudication of its claims for indemnification will require reference to the terms of the Global Settlement, which was approved by the bankruptcy court in connection with its confirmation of RFC's Chapter 11 liquidation plan.  To support this argument, RFC cites an array of cases that generally stand for the proposition that all courts, including bankruptcy courts, retain the jurisdiction to interpret and enforce their own orders.  See, e.g., In re Charter Commc'ns, No. 09-11435, 2010 WL 502764, at *4 (Bankr. S.D.N.Y. Feb. 8, 2010); Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009);

Baker v. Simpson, 613 F.3d 346, 352 (2d Cir. 2010); In re Petrie Retail, Inc., 304 F.3d 223, 230 (2d Cir. 2002).  While this principle is well-established, it is irrelevant to the question of whether a case is core or non-core.  Regardless of any constitutional limitations imposed on bankruptcy courts' ability to render a final judgment with respect to certain claims under Stern v. Marshall, bankruptcy courts continue to have jurisdiction over non-core matters.  28 U.S.C. §§ 157, 1334; Arkison, 134 S. Ct. at 2173.  Thus, the mere fact that a bankruptcy court has jurisdiction over a matter cannot establish that the matter is core.  RFC's litany of cases fails to support their contention that any proceeding that may involve a bankruptcy court's order is a core proceeding.

RFC's argument that the matter is core because the funds it seeks to recover are closely linked to the administration of its liquidation proceeding is also without merit.  In Orion, a creditor raised a similar argument, contending that its claims were core under section 157(b)(2)(A) of the Bankruptcy Code as "matters concerning the administration of the estate."  4 F.3d at 1102.  In vacating the district court's decision, the Second Circuit rejected the creditor's argument, holding that the mere fact that the proceeds of a successful claim would inure to the benefit of the estate and its creditors did not make it a core claim.  Id.  To reach a different result would "create[] an exception to Marathon that would swallow the rule," since the proceeds of any successful contract claim would similarly inure to the benefit of the estate.  Id. (citing Marathon Pipe Line Co., 458 U.S. 50).

The three district judges who have adjudicated a motion to withdraw the reference have each concluded that RFC's substantially claims against different originators are non-core. See Rescap Liquidating Trust v. RBC Mortg. Co., 14-cv-4457, Dkt. No. 10 at 3-4 (AKH) (S.D.N.Y. Jul. 18, 2014) ("Courts in this circuit have repeatedly found that when a debtor brings an adversary proceeding seeking indemnification pursuant to a pre-petition contract, those claims

are non-core."); <u>ResCap Liquidating Trust v. CMG Mortg., Inc.</u>, 2014 WL 4652664, at *2-3;

<u>Rescap Liquidating Trust v. Primary Capital Advisors, LLC</u>, 14-cv-5224, Dkt. No. 31 (LTS)

(S.D.N.Y. Sep. 16, 2014) ("[T]he claims asserted in the instant adversary proceeding are "related

to" the bankruptcy, and thus are non-core.").[4, 5]

   This Court agrees with Judge Hellerstein, Judge Pauley, and Judge Swain that

RFC's claims are non-core.  However, "[w]hile the non-core nature of [RFC's] claims weighs in

favor of withdrawing the reference from the bankruptcy court, the core/non-core determination

does not end the inquiry.  As the Second Circuit directed in <u>Orion</u>, 'once a district court makes

the core/non-core determination, it should weigh questions of efficient use of judicial resources,

delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum

shopping, and other related factors.' " <u>DeWitt</u>, 464 B.R. at 593 (citing <u>Orion</u>, 4 F.3d at 1101).

   In light of the determination that the matter is non-core, the adjudication of this

action will inevitably return to this Court at some point in time.  The question that remains is

whether that point in time should be the present, through withdrawal of the reference, or after the

bankruptcy court has submitted its proposed findings of fact and conclusions of law for <u>de novo</u>

---

[4] In <u>Residential Funding Co. v. UBS Real Estate Securities, Inc.</u>, 14-ap-1926, 2014 WL 4180278, at *2 (Bankr. S.D.N.Y. Aug. 25, 2014), in denying a motion to remand an action to state court, Judge Glenn ruled that the bankruptcy court had jurisdiction over RFC's claims.  Judge Glenn held that RFC's claims, substantially similar to the claims in the instant case, were core claims under 28 U.S.C. § 157(b)(2)(C) as "counterclaims by the estate against persons filing claims against the estate." <u>Id.</u> However, Judge Glenn made clear that the determinative reason for his holding was that UBS had filed a proof of claim against RFC's bankruptcy estate. <u>Id.</u> ("The RMBS Actions involve similar state law claims for breach of contract and indemnification related to the packaging and sale of residential mortgage backed securities.  What sets the UBS action apart is the fact that UBS filed a proof of claim against RFC in the bankruptcy case.  That distinction is determinative of the outcome of this Motion.").  Here, Greenpoint has not filed a proof of claim against the estate.

[5] In <u>Residential Funding Co., LLC v. Suntrust Mortg., Inc.</u>, 13-cv-8938 (RA) (S.D.N.Y. Jul. 3, 2014), Judge Abrams referred another of the RMBS Actions to the bankruptcy court.  RFC seeks to rely on this decision for the proposition that its claims in the instant action are core claims.  However, Judge Abrams merely referred the action pursuant to the Standing Order and expressly declined to conduct analysis under <u>Orion</u>. <u>Id.</u> at 5-6.  Further, in addressing whether the bankruptcy court had jurisdiction over the matter, Judge Abrams held only that the case was "at least 'related to' RFC's pending bankruptcy case . . . ." <u>Id.</u> at 3.  Because claims that fall under a bankruptcy court's "related to" jurisdiction may be non-core claims, this holding is irrelevant to the core/non-core determination.

review.  To answer this question, the Court must consider the remaining <u>Orion</u> factors.  Based on

the factual record before the Court, including the absence of the Minnesota exclusive forum

selection provision present in the previously decided motions to withdraw the reference in other

RFC Actions and considerations raised at oral argument, this Court concludes that the remaining

<u>Orion</u> factors compel denial of the motion to withdraw the reference.


      b.  <u>Efficient Use of Judicial Resources</u>

This Court concludes that the matter should remain in bankruptcy court primarily

because of Judge Glenn's expertise and extensive familiarity with the Plan and Global

Settlement in this complex bankruptcy case, which commenced in 2012.  Three primary

considerations relating to judicial efficiency weigh in favor of permitting the bankruptcy court to

enter proposed findings of fact and conclusions of law.  First, the methodology by which the

parties will determine Greenpoint's share of the liabilities incurred by RFC in the Global

Settlement is not a matter of reviewing a schedule or applying a simple arithmetic formula, but

will likely require substantial consideration, interpretation, and application of the terms of the

Plan and the Global Settlement incorporated therein.  Second, Greenpoint has reserved the right

to raise as a defense the reasonableness of the settlements reached by RFC under the Global

Settlement, and the reasonableness of those settlements is an issue that was squarely before

Judge Glenn in connection with his approval of the Global Settlement and confirmation of the

debtor's Chapter 11 Plan.  Third, at least two and potentially more of the RFC Actions will be

tried before Judge Glenn on a coordinated basis regardless of the outcome of any pending

motions to withdraw the reference.

At oral argument, neither RFC nor Greenpoint was able to articulate any contemplated methodology for determining how the liabilities incurred by RFC under the Global Settlement might be allocated among the many originators, like Greenpoint, that sold loans to RFC:

> THE COURT: [N]o one in this courtroom today can really tell me how one determines what your portion of the settlement is.  I don't know that you know what you are being sued for.  Do you know what you are being sued for?
>
> MR. MATHESON [representing Greenpoint]: I do not, your Honor. [. . .] That's a question we have been asking is [sic] about the allocation methodology plaintiffs intend to pursue, and we don't know yet know that.
>
> THE COURT: You don't know that, and it's not your position that there is one methodology and only one methodology and that you're here today to announce what that methodology is.  Is that a fair statement?
>
> MR. MATHESON: That is a fair statement.
>
> THE COURT: I think Mr. Nesser, if I heard him correctly, is similarly situated.  Is that correct, Mr. Nesser?
>
> MR. NESSER [representing RFC]: That's correct.

Tr. 24:9-25:3.  Under the terms of the Global Settlement, with respect to each of thousands of individual tranches within hundreds of RMBS securitizations, RFC agreed to settle individual claims in exchange for recognizing a corresponding claim in the bankruptcy proceeding.  See generally Plan, Appendix 1, Article IV A-J; id., schedules 1G, 1R, 2G, 2R, 3G, 3R.  Based on this Court's initial review of the Plan and the terms of the Global Settlement, and the discussion thereof at oral argument, it appears more likely than not that any allocation methodology will require substantial reference to and interpretation of the terms of the Plan and the Global Settlement.  Having approved the Plan and the Global Settlement, Judge Glenn is better situated than this Court to analyze, interpret, and apply its terms in connection with the allocation of

Greenpoint's potential liability based on the amounts that RFC agreed to pay under the Global Settlement.

At oral argument, Greenpoint conceded that, as a potential defense to indemnification liability, it may challenge the reasonableness of the settlement of certain claims resolved in the Global Settlement.  (Tr. at 10:8-15.)  The reasonableness of the Global Settlement and the resolution of all the constituent claims resolved therein is an issue that Judge Glenn directly addressed in the bankruptcy case.  His order approving the Global Settlement and confirming ResCap's Chapter 11 Plan specifically included a determination that the Global Settlement as a whole and each of the constituent settlements were reasonable.  Confirmation Order at ¶ DD, Dkt. No. 6065, In re Residential Capital, LLC, No. 12-12020 (Bankr. S.D.N.Y. Dec. 11, 2013) ("The Global Settlement, and each of the settlements embodied within the Global Settlement, is a result of good faith arm's-length negotiations, is in the best interests of the Debtors, the Estates, the RMBS Trusts, Investors, and other parties-in-interest, and is fair, equitable, and within the range of reasonableness.").  Having previously adjudicated the very issue that Greenpoint reserves the right to assert as a defense to RFC's indemnification claims, Judge Glenn has a significant advantage over this Court with respect to adjudicating this issue in the instant case.

At this juncture, two of the RFC Actions are going to remain before Judge Glenn as adversary proceedings regardless of the outcome of any pending motion to withdraw the reference in the other RFC Actions.  Residential Funding Co. v. HSBC Mortg. Corp. (USA), 14-ap-01915 (MG) (Bankr. S.D.N.Y.); ResCap Liquidating Trust v. Mortg. Investors Grp., Inc., No. 14-ap-02004 (MG) (Bankr. S.D.N.Y.).  Each of the originator defendants in the RFC Actions has collectively filed a motion to dismiss RFC's amended complaints in each adversary proceeding.

(Dkt. No. 18, In re Rescap Liquidating Trust Mortg. Purchasing Litig., No. 14-07900 (MG)

(Bankr. S.D.N.Y. Sep. 8, 2014))  Counsel for Greenpoint has separately filed an additional

motion to dismiss on behalf of Greenpoint and Summit Financial Mortgage LLC.  (Id., Dkt. No.

15)  The RFC Actions involve substantially similar allegations against different originators and

which will require a determination of the allocation of each originator's share of liability, if any,

for the amounts paid by RFC pursuant to the Global Settlement.  While it is true that over 70 of

the RFC Actions will be tried before separate courts in the District of Minnesota, this does not

negate the incremental efficiency of trying a subset of these actions before the same bankruptcy

court.

        Greenpoint argues that the heart of RFC's claims against it will entail the

interpretation of the terms of the Agreement between RFC and Greenpoint, and whether and to

what extent Greenpoint breached representations and warranties therein relating to the mortgage

loans that it originated and sold to RFC.  These breach of contract and indemnification claims do

not involve substantive bankruptcy law in any way, and as another district court has observed,

the bankruptcy court does not have a unique advantage as to state law contract law questions.

(Dkt. No. 31 at 8, Rescap Liquidating Trust v. Primary Capital Advisors, LLC, 14-cv-05224

(LTS) (S.D.N.Y. Sep. 16, 2014)).  While this may be true, RFC asserted at oral argument that

breach of contract claims for damages incurred outside the scope of the Global Settlement are

collateral in comparison to damages incurred under the Global Settlement.  (Tr. at 3:7-24)  The

previously identified issues involving the interpretation and application of provisions of the Plan

and Global Settlement constitute a substantial portion of the instant litigation as to which Judge

Glenn has an efficiency advantage.

Greenpoint further argues that if the action is non-core—which the Court has already concluded—the bankruptcy court will lack the authority to enter a final judgment. Greenpoint argues that this circumstance creates a second layer of "duplicative" litigation because this Court would be required to review the bankruptcy court's findings of fact and conclusions of law de novo.  See, e.g., Orion, 4 F.3d at 1101 ("the fact that a bankruptcy court's determination on non-core matters is subject to de novo review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court."); DeWitt Rehab and Nursing Center, Inc. v. Columbia Cas. Co., 464 B.R. 587, 593 (S.D.N.Y. 2012); Development Specialists, 462 B.R. at 472.  However, none of the foregoing cases asserting breach of contract claims required reference to, the interpretation of, and evaluation of the reasonableness of a complex settlement arrangement resolving liability that RFC now claims is attributable to at the actions of at least 84 different originators. Particularly where, as here, the bankruptcy court has substantial familiarity and facility with the Plan and the Global Settlement, permitting that court to try the case and enter proposed findings of fact and conclusions of law has significant efficiency advantages despite the need for de novo review before this Court.  Accordingly, considerations of the efficient allocation of judicial resources weigh in favor of denying the motion to withdraw the reference.

      c.   Delay and Costs to the Parties

Considerations of delay and costs to the parties do not weigh in favor of or against granting the motion to withdraw the reference.  No substantive rulings have been issued in the action either here or in the bankruptcy court.  While Greenpoint argues that the necessity of this Court's de novo review of the bankruptcy court's proposed findings of fact and conclusions of

law will impose additional costs on the parties, this consideration is outweighed by the likelihood that leaving the case before the bankruptcy court will facilitate a more efficient resolution of the case.  Further, neither side has made a jury demand, and the language of the Agreement indicates that the parties agreed to waive their right to a jury trial.  Am. Compl. Ex. A at 45, Dkt. No. 33-1, 13-cv-8937 (PKC) (S.D.N.Y. Mar. 3, 2014).

### d.   Uniformity of Bankruptcy Administration

Whether a bankruptcy court's adjudication of a claim would promote uniformity of bankruptcy administration depends on the nature of the cause of action.  See Dynegy Danskammer, 905 F. Supp. 2d at 533 ("Courts routinely have found no benefit where claims are based on state law." (citing Dev. Specialists at 472)).  Because this case involves no issues of substantive bankruptcy law, this factor weighs in favor of withdrawal of the reference.

### e.   Forum Shopping

RFC filed the instant action in this Court, invoking the Court's diversity jurisdiction and making no mention of bankruptcy jurisdiction at the time.  (Dkt. No. 1, 13-cv-8937 (PKC))  In March 2014, RFC amended its complaint to assert bankruptcy jurisdiction for the first time.  (Id., Dkt. No. 33)  RFC's jurisdictional about-face, particularly when considered in the context of its broader campaign to transfer the actions it filed in non-bankruptcy courts in Minnesota and New York, is suggestive of forum shopping.  Nevertheless, RFC's tactics may have been undertaken in the legitimate pursuit of efficiency.  Overall, this factor weighs neither in favor nor against granting the motion to withdraw the reference.

    f.   <u>On Balance, the Orion Factors Weigh Against Withdrawal of the Reference.</u>

In sum, although the question is close, this Court concludes that considerations of the efficient allocation of judicial resources outweigh Greenpoint's arguments in favor of withdrawal of the reference, such that Greenpoint has not carried its burden to prove that withdrawal is warranted by a preponderance of the evidence. Accordingly, the motion to withdraw the reference will be denied.

<u>CONCLUSION</u>

For the foregoing reasons, this Court holds that it has "related to" jurisdiction and the action is non-core, but the <u>Orion</u> factors favor allowing the action to remain with the bankruptcy court until it submits proposed findings of fact and conclusions of law to this Court for <u>de novo</u> review. At that juncture, the parties may make further submissions in opposition to or support of the proposed findings and conclusions. The motion to withdraw the reference (Dkt. No. 1) is DENIED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       September 24, 2014